# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

————————

m 99-21109
Summary Calendar

————————

PAMELA R. LOOKSHIN,

Plaintiff-Appellee,

VERSUS

ALDINE INDEPENDENT SCHOOL DISTRICT, ET AL.,

Defendants,

FREDDY GOULD,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-2600)

————————————

July 24, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Freddy Gould appeals the denial of his motion for summary judgment based on qualified immunity under TEX. EDUC. CODE ANN.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be (continued...)

_____

[*](...continued)
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 22.051(a). We affirm.

## I.

Pamela Lookshin was a teacher's aid at Stehlik Intermediate School; Gould was the principal. Gould alleges that he was told that someone was removing disposed-food "slop" from a receptacle at the school. He asserts that the culprit was Lookshin, that she was warned that her continued employment depended on ceasing to remove further slop, and that, when she continued to remove slop later that same day, she was, following proper procedure, terminated.

Lookshin contests that the slop-stealing incident is misdescribed and insists that she was terminated because she thwarted Gould's unwitnessed sexual advances. She sued, alleging seven counts, including defamation, national origin discrimination, title VII violations, Texas workers' compensation statute violation, assault, battery, and intentional infliction of emotional distress ("i.i.e.d."). The district court dismissed all but the last three claims *via* summary judgment but denied Gould's claim of qualified immunity from the remaining counts under § 22.051(a).

## II.

Lookshin questions whether we have appellate jurisdiction, arguing that we may not exercise jurisdiction over the appeal of a claim of qualified immunity based solely on state law. Our precedent directs otherwise. "We have previously held that an order denying qualified immunity under state law is immediately appealable as a "final decision," provided that "the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability."[1]

Our jurisdictiion over qualified immunity appeals is limited:

> District court orders denying summary judgment on the basis of qualified immunity are immediately appealable under the collateral order doctrine, notwithstanding their interlocutory character, when based on a conclusion of law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). In contrast, such orders are not immediately appealable if they are based on sufficiency of the evidence. *See Johnson v. Jones*, 515 U.S. 304, [319-20] (1995). Therefore, orders denying qualified immunity are immediately appealable only if they are predicated on pure conclusions of law, and not if a "genuine issue of material fact" precludes summary judgment on the question of qualified immunity.

*Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (some citation information omitted). Because the issues appealed here implicate questions of interpretation and application of relevant law, they are properly before us.

## III.
### A.

Gould complains that the district court "erred when it applied the wrong standard in evaluating [his] qualified immunity defense." He notes that the court relied, in defining the

---

[1] *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996) (*citing Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988) (establishing that this framework is employed even if the claim of qualified immunity is based *solely* on state law)).

elements of qualified immunity, on *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994), which discussed *official* immunity, derived from the common law, rather than immunity derived specifically from § 22.051(a). He correctly states that "official immunity is a common law doctrine . . . distinct from the statutory immunity created by § 22.051." *Downing v. Brown*, 925 S.W.2d 316, 319 (Tex. App.SSAmarillo), *aff'd in part and rev'd in part*, 935 S.W.2d 112 (1996).

In relying on *City of Lancaster*, the district court indicated that "professional employees receive immunity for acts within the scope of their duties as long as those acts are within the scope of the employee's authority and are taken in good faith." It is the last element to which Gould objects; he acknowledges that, even under § 22.051, an act protected by qualified immunity must be "within the scope of the employee's authority" as that element is discussed by the district court throughout its order; he argues, however, that statutory immunity, unlike common-law based immunity, does not require the party invoking the protection to demonstrate good faith.

The district court then went on to deny Gould statutory immunity *not* because he had failed to demonstrate good faith, but because he had not demonstrated that his acts were "incident to or within the scope of [his] duties," which is an element drawn directly from Gould's interpretation of the proper application of § 22.051(a). Even if error, the district court's stray reference to good faith, never mentioned again or made part of its analysis, is harmless.[2]

___

[2] *Cf. Orellana v. Kyle,* 65 F.3d 29, 33 (5th Cir. 1995) (application of incorrect legal stan-
(continued...)

### B.

Gould argues, alternatively, that he should have been granted qualified immunity because the actions he allegedly tookSSgroping Lookshin in his officeSSwere "incident to or within the scope of his duties" in that he is authorized, as principal, to summon employees to his office. This reasoning fails to recognize that Lookshin does not allege assault, battery, and i.i.e.d. because she was summoned to the office. She does not suggest that the summons was an improper application of a principal's authority. It is what allegedly happened *after* the summons which she protests.

Gould contends, though, that because the alleged groping followed a sanctioned summons, he is immune to suit based on it. He cites a wealth of inapposite caselaw.[3] Some of these cases lack any relevance; the others illustrate the precariousness of Gould's argument.

In *Jones*, the plaintiff, a substitute teacher, claimed school officials had libeled him in letters written to one another evaluating his workplace behavior. *See Jones*, 979 F.2d at 1005, 1006. We held that "circulation of memoranda within [the school district] regarding Jones's fitness for employment was within the scope of the defendants'

___

[2](...continued)
dard harmless if conclusion unchanged).

[3] *See Jones v. Houston Indep. Sch. Dist.*, 979 F.2d 1004 (5th Cir. 1992); *Anderson v. Blankenship*, 790 F. Supp. 695, 697 (E.D. Tex. 1992); *Cox v. Galena Park Indep. Sch. Dist.*, 895 S.W.2d 745, 747 (Tex. App.SSCorpus Christi 1994, no writ); *Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954 (Tex. App.SSBeaumont 1991, no writ).

3

employment and involved the exercise of judgment and discretion. The individual defendants therefore are immune from liability." *Id.* at 1007.

Likewise, in *Williams*, a school bus driver sued after he was terminated, allegedly for having propositioned a student, and was denied rehiring. *See Williams*, 809 S.W.2d at 956. He sought relief for the state law claims of defamation and i.i.e.d. *Id.* at 957. The court rightly found that "decid[ing] not to rehire Williams[,] . . . officiat[ing] at a post-termination hearing held at Williams' request," and acting as "one of the witnesses at that hearing" qualified as acts arising out of the scope of employment, because these supervisory employees were required to make employment decisions about individual employees. *Id.* at 956, 957-58.

In both of these cases, the alleged tort arose as part of the employment-related acts: reviewing fitness and rendering employment decisions. In *Anderson*, meanwhile, the court merely assumed, without consideration, that a coach's report to a local newspaper about another coach's recruiting violations came within the scope of employment. *See Anderson,* 790 F. Supp. at 696. The scope-of-employment aspect of the qualified immunity was apparently neither specifically considered nor challenged.[4]

---

[4] The other cases cited by Gould are entirely irrelevant. In *Cox*, the claims were dismissed for want of specificity and proscription, so the relevant qualified immunity issues were not broached on appeal. *See Cox*, 895 S.W.2d at 747-50. In *Eugene*, the immunity in question was immunity from federal, not state, claims and thus was considered under a different standard. *See Eugene*, 65 F.3d (continued...)

Gould has based his entire claim of qualified immunity on the fact that it is within his discretion to call employees to his office. The alleged groping, however, did not spring from the legitimate act of calling an employee to the

---

[4](...continued)
at 1305.

Gould points us, too, to a recent case that has nothing to do with qualified immunity but which, he argues, should guide our understanding of what constitutes acts "in the scope of employment." In *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex. 1999), four employees claimed that a supervisor

> constantly harassed and intimidated them. The employees complained about Shield's daily use of profanity, short temper, and his abusive and vulgar dictatorial manner. The employees complained that, among other offensive acts, [the supervisor] repeatedly yelled, screamed, cursed, and even "charged" at them. In addition, he intentionally humiliated and embarrassed the employees.

*Id.* at 608-09. A jury found this behavior to fit within the "scope of the supervisor's employment" for vicarious liability purposes. We are loath to assume that Texas courts would transfer their understanding of "scope of employment" from the realm of vicarious liability to that of qualified immunity, given the radically different rationales for the "scope of employment" consideration in each and what that consideration accomplishes.

Even were we to employ *GTE Southwest* as a model, however, we would note that however truly abusive the supervisor's behavior was, it could still be ascribed, at least nominally, to the employment-related act of motivating his workers and increasing productivity. It is impossible to imagine to what employment-related purpose this alleged groping could be ascribed.

office as an appurtenance to the calling, but followed the summons to the office as an independent act. It lies therefore beyond the qualified immunity created solely by the fact that Gould acted within his discretionary authority in summoning Lookshin.

The result presumably would be different if Gould had shown that he had touched Lookshin, if at all, in pursuit of the legitimate employment activity of breaking up a fight, or catching Lookshin as she was about to fall to the ground, or for any other legitimate purpose. Gould, however, provides no employment-related function that might justify the alleged touching itself.

Gould asserts that this touchingSSthat the entire incidentSSdid not occur. We take no position on the relative credibility of either party. We merely conclude that Gould has provided us no reason to decide, at the summary judgment stage, that the fact that his employment allowed him to call employees to his office created complete immunity for any unrelated act that followed that summons, regardless of the nature of that subsequent alleged act.

AFFIRMED.